



# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * CRIMINAL NO. | 6:21-cr-00312 |
| | * 18 U.S.C. § 1349 | Judge Summerhays |
| | * 18 U.S.C. § 1347 | Magistrate Judge Hanna |
| VERSUS | * 18 U.S.C. § 2 | |
| | * 18 U.S.C. § 982(a)(7) | |
| | * 28 U.S.C. § 2461(c) | |
| KRISTAL GLOVER-WING      (01) | * | |
| GARY M. WILTZ, M.D.      (02) | * | |
| CHARLES H. LOUIS, M.D.      (03) | * | |

## INDICTMENT

THE FEDERAL GRAND JURY CHARGES THAT:

### COUNT 1
### CONSPIRACY TO COMMIT HEALTH CARE FRAUD
### 18 U.S.C. § 1349

AT ALL TIMES RELEVANT TO THIS INDICTMENT:

A.    INTRODUCTION

1.    Angel Care Hospice, Inc. ("ACH"), was a Louisiana corporation that purported to provide hospice services in Lafayette Parish and in surrounding parishes within the Western District of Louisiana.

2.    Defendant KRISTAL GLOVER-WING owned and controlled ACH and served as its president.

1

3.     Defendant GARY M. WILTZ, M.D., is a Louisiana licensed physician. During various time periods, he served as medical director of ACH.

4.     Defendant CHARLES H. LOUIS, M.D., is a Louisiana licensed physician.  He also served as medical director of ACH during various time periods, including the time period from 2014 to 2017.

B.     THE MEDICARE PROGRAM

5.     The Medicare Program ("Medicare") was a federal government benefit program, affecting commerce, which provided benefits to individuals who were over the age of sixty-five (65) or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).  Medicare was subdivided into multiple parts.  Part A of Medicare covered hospice services.

6.     Individuals who qualify for Medicare benefits were commonly referred to as "Medicare beneficiaries."  Each Medicare beneficiary was given a Medicare identification number.

7.     Health Care Providers were given and provided with online access to Medicare manuals and bulletins describing proper billing procedures and billing rules and regulations.

C.    HOSPICE CARE

8.    Hospice care was a set of services meant to provide for the physical, psychosocial, spiritual, and emotional needs of a terminally ill patient or the patient's family members. Hospice care was also known as palliative care, which meant care that was intended to alleviate suffering rather than to cure illness.

9.    According to Medicare's regulations, to be eligible to elect hospice care under Medicare, the patient was required to be entitled to Part A of Medicare and be certified as being terminally ill. An individual was determined to be terminally ill if the medical prognosis was that the individual's life expectancy was six (6) months or less if the illness ran its course. Medicare only covered care provided by (or under arrangements made by) a Medicare certified hospice.

10.    A hospice company was permitted to admit a patient to receive hospice care only on the recommendation of the Hospice Medical Director in consultation with, or with input from, the patient's attending physician, if the patient had one. In determining whether to certify that the patient was terminally ill, the Hospice Medical Director was required to consider at least the following information: (1) diagnosis of the terminal condition of the patient; (2) other health conditions, whether related or unrelated to the terminal condition; and (3) current clinically relevant information supporting all diagnoses.

11.    The certification of terminal illness was required to be based on the clinical judgment of the Hospice Medical Director or physician member of the

Interdisciplinary Group and the patient's attending physician, if the patient had one, regarding the normal course of the patient's illness. The signed certification of terminal illness had to provide the following information: (1) a prognosis for a life expectancy of six (6) months or less if the terminal illness ran its normal course; (2) clinical information and other documentation that supported the prognosis; and (3) a brief narrative explanation of the clinical findings that supported a life expectancy of six (6) months or less.

12.    A beneficiary could be certified in this manner for two ninety-day hospice benefit periods, or for about six (6) months.  Before a beneficiary could further be certified for additional hospice benefit periods, Medicare required that a licensed physician or nurse practitioner have a face-to-face encounter with the beneficiary to determine whether they were still hospice eligible.  The physician or nurse practitioner was required to attest in writing that he or she had a face-to-face encounter with the patient, including the date of the visit.  The narrative associated with this third benefit period, and every subsequent sixty-day recertification, needed to include an explanation as to why the clinical findings of the face-to-face encounter supported a life expectancy of six (6) months or less.

13.    If the Medicare beneficiary (or the beneficiary's authorized representative) elected to receive hospice care, the Medicare beneficiary was required to file an election statement with a particular hospice company.

14.     Medicare regulations required hospice companies providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment, a diagnosis of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the hospice companies.

15.     These medical records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the hospice company.

16.     CMS contracted with Medicare Administrative Contractors ("MACS") to process claims for payment.  The MACS that processed and paid MACS Part A claims in  the State of Louisiana was Palmetto GBA.

17.     To bill Medicare for services rendered, an authorized provider submitted a claim form ("FORM 1500") to Palmetto GBA.  When a FORM 1500 was submitted, the provider certified that: (a) the contents of the form were true, correct, and complete; (b) the form was prepared in compliance with the laws and regulations governing Medicare; and (c) the services being billed were medically necessary.

18.     A Medicare claim for payment was required to include, among other things, (a) the beneficiary's name and unique medical identification number; (b) the item or service provided; (c) the cost of the item or service; and (d) the name and Unique Physician Identification Number ("UPIN"), and/or the National

Provider Identifier ("NPI") of the physician who prescribed or ordered the item of service.

### D.    THE PURPOSE OF THE CONSPIRACY

19.    It was a purpose of the conspiracy for the defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., and others both known and unknown to the Grand Jury, to unlawfully enrich themselves by (a) submitting false and fraudulent claims to Medicare; and (b) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### E.    THE MANNER AND MEANS OF THE CONSPIRACY

20.    The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, but were not limited to, the following:

(a) It was part of the conspiracy that Defendant, KRISTAL GLOVER-WING, would apply for and maintain a Medicare provider number associated with ACH.

(b) It was part of the conspiracy that Defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., would purportedly provide hospice care through ACH to medical beneficiaries knowing that such services were medically unnecessary and did not comply with Medicare's requirements for reimbursement.

(c)  It was part of the conspiracy that Defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., would knowingly and willfully submit, and caused the submission of, false and fraudulent claims to Medicare on behalf of ACH for medically unnecessary services and services that did not comply with Medicare's requirements for reimbursement.

(d)  It was part of the conspiracy that Defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., would conceal, and attempt to conceal, their submission of false and fraudulent claims to Medicare by falsifying, and causing the falsification of, patient records and other documentation related to services provided by ACH.

(e)  It was part of the conspiracy that Defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., would cause Medicare to make payments to ACH based upon the submissions of false and fraudulent claims.

(f)  It was part of the conspiracy that Defendant, KRISTAL GLOVER-WING, would cause payments to be paid to her co-conspirators, GARY M. WILTZ, M.D. and CHARLES H. LOUIS, M.D., as medical directors of ACH, in exchange for these co-conspirators certifying to Medicare that patients qualified for hospice services when, in fact, they did not qualify for such services.

(g)  It was part of the conspiracy that Defendants, GARY M. WILTZ, M.D. and CHARLES H. LOUIS, M.D., would receive payments from ACH in

exchange for certifying to Medicare that patients qualified for hospice services when, in fact, they did not qualify for such services.

(h)  It was part of the conspiracy that Defendants, GARY M. WILTZ, M.D. and CHARLES H. LOUIS, M.D., would refer patients to ACH for hospice services, including patients that did not qualify for such services.

(i)  It was part of the conspiracy that Defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., would keep patients on hospice care for lengthy time periods, sometimes exceeding one (1) year, in order to increase revenue from Medicare.

(j)  It was part of the conspiracy that ACH submitted fraudulent claims to Medicare for medically unnecessary hospice services, which resulted in approximately $1,539,161.10 being paid to ACH.

21.    From on or about 2009 and continuing through 2017 in the Western District of Louisiana, the defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., knowingly and willfully did combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the

custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1349.  [18 U.S.C. § 1349].

## COUNTS 2 – 4
## HEALTH CARE FRAUD
## 18 U.S.C. §§ 1347 and 2

A.    INTRODUCTION

22.  The Grand Jury incorporates by reference and realleges Paragraphs 1 through 18 as though fully set forth herein.

B.    THE SCHEME TO DEFRAUD

23.   From on or about 2009 and continuing through 2017, in the Western District of Louisiana, the defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., along with others known and unknown to the Grand Jury, in connection with the delivery of payments for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, all in violation of Title 18, United States Code, Section 1347.  [18 U.S.C. § 1347].

## C.    EXECUTION OF THE SCHEME

24.    On or about the dates listed below in the Western District of Louisiana, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, the defendants, KRISTAL GLOVER-WING, GARY M. WILTZ, M.D., and CHARLES H. LOUIS, M.D., caused the transmission of the following claims to Medicare from Angel Care Hospice, Inc., which were for the Medicare beneficiaries, the approximate dates of service, and the approximate amounts listed below:

| COUNT NUMBER | DEFENDANT | CERTIFICATION PERIOD | ENTITY | DESCRIPTION OF SERVICES | PATIENT | TOTAL MEDICARE PAYMENTS |
|---|---|---|---|---|---|---|
| 2 | KRISTAL GLOVER-WING  GARY M. WILTZ, M.D. | February 4, 2016 – January 26, 2017 | ACH | Hospice Services | CA | $46,762.24 |
| 3 | KRISTAL GLOVER-WING  GARY M. WILTZ, M.D.  CHARLES H. LOUIS, M.D. | July 29, 2016 – June 20, 2017 | ACH | Hospice Services | EA | $43,281.18 |
| 4 | KRISTAL GLOVER-WING  GARY M. WILTZ, M.D.  CHARLES H. LOUIS, M.D. | August 31, 2016 – February 7, 2017 | ACH | Hospice Services | LC | $22,358.77 |

All in violation of Title 18, United States Code, Sections 1347 and 2. [18

U.S.C. §§ 1347 and 2].

A TRUE BILL:

# REDACTED

FOREPERSON:  GRAND JURY

BRANDON B. BROWN
United States Attorney

By: _____

KELLY P. UEBINGER, LA Bar No. 21028
J. DANIEL SIEFKER, JR., LA Bar No. 34764
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone:  (337) 262-6618